UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

FORT WORTH DIVISION

| | |
|---|---|
| JOHN DAVIS and JESSE HERFEL,<br><br>*Plaintiffs,*<br><br>v.<br><br>KELLER WILLIAMS REALTY, INC., GARY KELLER, JOHN KELLER, JOSH TEAM, BUSINESS MAPS, LTD., BUSINESS MAPS MANAGEMENT, LLC, 72 SOLD, INC., JONATHAN DUPREE, MARC KING, JASON ABRAMS, MATT GREEN, WILLIAM SOTEROFF, KWx, LLC, LIVIAN LLC, and KW SOUTHWEST REGION,<br><br>*Defendants.* | Civil Action No.: 4:23-cv-01223 |

**PLAINTIFF JOHN DAVIS'S MEMORANDUM OF LAW IN OPPOSITION TO**
<u>**DEFENDANTS' MOTION FOR CONTEMPT**</u>

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 1

    I.    LEGAL STANDARD ........................................................................................................ 2

    II.    ARGUMENT ..................................................................................................................... 3

        A.    Defendant Fails to Establish that Plaintiff Failed to Comply with a Court Order .......... 3

        B.    Plaintiff Davis Did Not Improperly File the Proposed Demand for Arbitration ............ 6

        C.    Defendants Have Wasted Judicial Resources and Violated This Court's Order ............ 7

        D.    As A Result of Defendants' Improper Motion and Waste of Judicial Resources, Defendants' Should Be Ordered to Pay Plaintiff Davis's Attorneys' Fees Associated with This Motion ..................................................................................................................... 10

CONCLUSION ............................................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Carter v. Transp. Workers Union of Am., Loc. 556*, 686 F. Supp. 3d (N.D. Tex. 2023) ........................................................................ 10

*Cook v. Ochsner Found. Hosp.*, 559 F.2d (5th Cir. 1977) ........................................................................................................ 10

*Crowe v. Smith*, 151 F.3d (5th Cir. 1998) ........................................................................................................ 2

*Gibson Brands, Inc. v. Armadillo Distribution Enterprises, Inc.*, No. 4:19-CV-00358, 2023 WL 2352830 (E.D. Tex. Mar. 3, 2023) .......................................... 7

*Henderson v. Dep't of Pub. Safety & Corr.*, 901 F.2d (5th Cir. 1990) ........................................................................................................ 10

*Hornbeck Offshore Servs., L.L.C. v. Salazar*, 713 F.3d (5th Cir. 2013) ........................................................................................................ 2

*In re Bradley*, 588 F.3d (5th Cir. 2009) ........................................................................................................ 2

*Martin v. Trinity Indus., Inc.*, 959 F.2d (5th Cir. 1992) ........................................................................................................ 2

*Petroleos Mexicanos v. Crawford Enter., Inc.*, 826 F.2d (5th Cir. 1987) ........................................................................................................ 3

*Roadway Express, Inc. v. Piper*, 447 U.S. (1980) ........................................................................................................................ 2

*SEC v. First Fin. Grp. of Tex., Inc.*, 659 F.2d (5th Cir. 1981) ........................................................................................................ 2

*SEC v. Res. Dev. Int'l LLC*, 217 F. App'x (5th Cir. 2007) ................................................................................................ 3

*Seven Arts Pictures, Inc. v. Jonesfilm*, 512 F. App'x (5th Cir. 2013) ................................................................................................ 2

*Shafer v. Army & Air Force Exch. Serv.*, 376 F.3d (5th Cir. 2004) ........................................................................................................ 3

*Spallone v. United States*, 493 U.S. (1990) ........................................................................................................................ 3

*Travelhost Inc. v. Blanford*, 68 F.3d (5th Cir. 1995) ........................................................................................................ 2

**Other Authorities**

*John Davis escalates lawsuit against KW with new accusations*, Inman (Mar. 4, 2025) ............... 6

**Rules**

9 U.S.C. § 3 ............................................................................................................................... 9

# INTRODUCTION

Plaintiff John Davis[1] hereby opposes Defendants' Motion for Contempt and cross-moves requesting that Keller Williams Defendants be held in contempt. The Keller Williams Defendants incredibly and falsely claim that Plaintiff has wasted judicial resources for the sake of media attention when, in reality, that is merely a projection of what the Keller Williams Defendants are doing. To be clear, Plaintiffs' Motion to Appoint an Arbitrator (ECF No. 44) was filed *in an attempt to proceed to arbitration*, and was only filed after Defendants delayed for over two months in selecting an arbitrator. Moreover, Defendants run to this Court—again to waste judicial resources—because they are upset that Plaintiff's filing brought *some* media attention, which, ironically, was not prompted or solicited by Plaintiff in any way.

Defendants are correct—this is not New York—and Plaintiff's Motion to Appoint an Arbitrator was filed in accordance with this Court's local rules, which perhaps Defendants failed to check prior to filing the instant Motion. Ironically, after the parties filed their March 4, 2025 status report, Defendants ran to their media contacts and did the very thing that they are accusing Plaintiff of, and issued a misleading, cherry-picked article in Inman, an outlet which *Keller Williams pays for advertising*. Plaintiff has done nothing more than attempt to move this process along so that the parties can finally get to arbitration. Defendants, on the other hand, continue to delay (as evidenced by the multiple uncalled-for requests for extensions and refusal to reach an agreement as to an arbitrator), and waste judicial resources by filing this Motion. The parties now

---

[1] Plaintiff notes that Defendants' Motion is a further, improper personal attack on Plaintiff Davis, in which Defendants are improperly using this Court's resources for media headlines. In filing this Motion, Defendants fail to acknowledge that there are multiple Plaintiffs in this case and choose instead to only blame Plaintiff Davis, demonstrating that this is a frivolous, personally charged motion that does not further the interests of this case and should not be in front of this Court at all. Accordingly, Plaintiff requests that sanctions and attorneys' fees associated with this motion be imposed against Defendants.

1

have an arbitrator. Defendants' Motion must be dismissed as moot. In the alternative, Plaintiff requests that this Court finds Gary Keller and the Keller Williams Defendants in contempt for their clear lack of cooperation and waste of judicial resources.

## I.   LEGAL STANDARD

A movant in a civil contempt proceeding bears the burden of establishing by clear and convincing evidence (1) that a court order was in effect, (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order." *Seven Arts Pictures, Inc. v. Jonesfilm*, 512 F. App'x 419, 422 (5th Cir. 2013) (quoting *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir.1992)); *see also Travelhost Inc. v. Blanford*, 68 F.3d 958, 961 (5th Cir. 1995). Placing the burden on the movant is consistent with the requirement that the Court's inherent power to punish for contempt "must be exercised with restraint and discretion." *Hornbeck Offshore Servs., L.L.C. v. Salazar*, 713 F.3d 787, 792 (5th Cir. 2013) (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)). "Rather than stemming from a 'broad reservoir,' they are 'implied power[s,] squeezed from the need to make the court function.'" *Hornbeck*, 713 F.3d at 792. (citing *Crowe v. Smith*, 151 F.3d 217, 226 (5th Cir. 1998)) (alterations in original).

"A party commits contempt when he violates a ***definite and specific*** order of the court ***requiring him to perform or refrain from performing a particular act or acts*** with knowledge of the court's order." *SEC v. First Fin. Grp. of Tex., Inc.*, 659 F.2d 660, 669 (5th Cir. 1981) (emphasis added). The purpose of civil contempt is not to punish a party, but only "to compel obedience to a court order." *See In re Bradley*, 588 F.3d 254, 263 (5th Cir. 2009) ("If the purpose of the sanction is to punish the contemnor and vindicate the authority of the court, the order is viewed as criminal. If the purpose of the sanction is to coerce the contemnor into compliance with a court order, or to compensate another party for the contemnor's violation, the order is considered purely civil.").

In a civil contempt proceeding, the movant bears the burden of establishing the elements of contempt by clear and convincing evidence. *SEC v. Res. Dev. Int'l LLC*, 217 F. App'x 296, 298 (5th Cir. 2007) (citing *Petroleos Mexicanos v. Crawford Enter., Inc.*, 826 F.2d 392, 401 (5th Cir. 1987)). "Clear and convincing evidence is that weight of proof which produces in the mind of the trier of fact a firm belief or conviction ... so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case." *Shafer v. Army & Air Force Exch. Serv.*, 376 F.3d 386, 396 (5th Cir. 2004). When considering a civil contempt motion, "a court is obliged to use the least possible power adequate to the end proposed." *Spallone v. United States*, 493 U.S. 265, 276 (1990).

II.   **ARGUMENT**

**A. Defendants Fail to Establish that Plaintiff Failed to Comply with a Court Order**

Defendants failed to prove that Davis violated a "definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts." That is because, among other things, Davis <u>did not</u> violate this Court's August 12, 2024 Order compelling Plaintiffs' claims to arbitration (the "Arbitration Order").

First, the Arbitration Order does not set a deadline or otherwise provide a definite and specific date or timeline for the parties, including Davis, to file for or commence or complete arbitration. The Arbitration Order is also notably silent as to which party is responsible for commencing arbitration. In other words, nothing in the Arbitration Order definitively and specifically requires Davis to commence the arbitration—the Keller Williams Defendants, at any time, could have proposed arbitrators or filed a motion to appoint an arbitrator. Moreover, but for

3

Defendants' refusal to agree to an arbitrator, arbitration forum, if any, process for choosing an arbitrator, Davis, or Davis and Defendants jointly, would have already filed for arbitration.

This Court's August 12, 2024 Arbitration Order compelled all claims against Defendants, with the exception 72Sold, Inc., to arbitration. From that point on, Plaintiffs began working on their Demand for Arbitration. Since the Arbitration Order does not specify an arbitrator, arbitration forum, if any, or any out-of-court process for choosing an arbitrator, this Court presumably intended for the parties to cooperate with each other and attempt in good faith to come to an agreement. Davis attempted to obtain such agreements, but to no avail.

Indeed, on November 21, 2024, Counsel for Plaintiffs emailed Counsel for Defendants a list of eleven (11) potential arbitrators, all of whom were extremely qualified to handle a matter of this complexity. Defendants ignored this email. On December 10, 2024, Counsel for Plaintiffs emailed Counsel for Defendants following up on the list of proposed arbitrators. Counsel for Defendants responded, ignoring the list of qualified proposed arbitrators, and requested to use Jeff Abrams, who the parties have agreed to use in a separate litigation against KWRI. Counsel for Plaintiffs opposed this request and again requested that Counsel for Defendants advise if any individuals on the proposed list of arbitrators were agreeable. Counsel for Defendants again ignored this email. Counsel for Plaintiffs followed up via email yet again and advised Counsel for Defendants that if Counsel for Defendants did not respond by Monday, December 23, 2024, Counsel for Plaintiffs would contact the Court. Counsel for Defendants responded at the end of the day on December 23, 2024, and proposed two potential Austin arbitrators. Counsel for Plaintiff did not agree, and proposed seven qualified arbitrators. Counsel for Defendants responded, stating that they would not agree to any of Plaintiff's proposed arbitrators.

Only after the parties spent over two months without an agreement did Plaintiffs file their Motion to Appoint an Arbitrator. Plaintiff's Motion was filed solely in an attempt to *get to arbitration*. In other words, Plaintiffs had been ignored by Defendants multiple times while they were explicitly *trying to comply with this Court's August 12 Arbitration Order*. Any delay was the sole responsibility of Defendants[2]. Indeed, Defendants' continuous delay is demonstrated by their multiple requests for an extension to file a simple status report to Magistrate Judge Ray so that an arbitrator could be selected, which Plaintiff had no choice but to oppose after multiple unreasonable delays. *See* ECF No. 57. Defendants claimed that their inability to submit a status report ranking arbitrators was due to Defendants traveling. Now, in this Motion, Defendants claim that their inability to respond to Plaintiffs' multiple emails proposing arbitrators was due to the impending holidays. These are all excuses, and an attempt to blame Plaintiff Davis *for their own delay and lack of cooperation*.

As demonstrated above, there was no violation of the Arbitration Order, and Defendants certainly failed to prove with clear and convincing evidence that Davis violated a definite and specific order of this Court. In fact, upon closer examination, there is no factual or legal basis for the Defendants' claim that Davis violated a definite and specific order of this Court. Thus, the Motion appears to be nothing more than an attempt to bully and intimidate Davis.

Plaintiffs are ready to move forward with arbitration in compliance with this Court's order. Defendants are merely delaying yet again. **Defendants' gamesmanship must stop now**.

---

[2] Defendants attempt to claim that an agreement was not reached because at one point Plaintiffs proposed arbitrators outside the state of Texas. The reality is, even after Plaintiff's Motion was filed and the parties exchanged lists of Texas arbitrators, the parties *still* could not reach a mutual agreement and had to submit lists of arbitrators to Magistrate Judge Ray for selection. Defendants' argument is inapposite.

## B. Plaintiff Davis Did Not Improperly File the Proposed Demand for Arbitration

Defendants grasp at straws attempting to claim that Plaintiff Motion to Appoint an Arbitrator and the attached exhibits were improper. Even more incredibly, Defendants somehow attempt to claim that the filing of the Demand for Arbitration as an exhibit was a violation of this Court's Arbitration Order. As stated above, Defendants are merely upset that Plaintiff's filing gained some media attention from The Real Deal. However, Defendants fail to acknowledge that: (i) Plaintiff did not contact the Real Deal or prompt this article in any manner; and (ii) Defendants were given the same opportunity to comment on the article as Plaintiffs. While Defendants claim that Plaintiff improperly used the Court for media attention—which he clearly did not, given that he did not reach out to one single reporter—Defendants used their own, *paid for*, media outlet to publish *their own article* following the March 4, 2025 Joint Status Report. *See John Davis escalates lawsuit against KW with new accusations*, Inman (Mar. 4, 2025), available at https://www.inman.com/2025/03/04/john-davis-escalates-lawsuit-against-kw-with-new-accusations/.

Interestingly, Inman, who has a paid partnership with Keller Williams[3], only took comments from Defendants, and never reached out to Plaintiffs prior to publication. In other words, Defendants did exactly what they are accusing Plaintiff of—planted biased media articles in favor of Defendants based off court filings. Plaintiff never did this with The Real Deal, as Defendants appear to assert. Defendants cannot run to this Court to waste judicial resources merely because they are upset that Plaintiff's claims rang true with some real estate media outlets and garnered organic attention. Defendants need to focus more on litigating these claims in arbitration

---

[3] *See, e.g., Inman Partners with Keller Williams on Think Like a CEO Podcast*, Inman, available at https://www.kwelitemassapequa.com/post/inman-partners-with-keller-williams-on-think-like-a-ceo-podcast.

(as Plaintiffs have been trying to do in requesting that an arbitrator be appointed), and less on the media.

Further, Defendants incredibly and incorrectly claim that Plaintiff's filing of the Demand for Arbitration as an exhibit to his Motion to Appoint an Arbitrator was improper and strategic. Quite the opposite. Plaintiffs were merely following the closest possible local rule of this Court in doing so. Indeed, Local Rule 15.1(b) states:

> When a party files by electronic means a motion for leave to file an amended pleading, **the party must attach the proposed amended pleading to the motion as an exhibit**. If leave is granted, the amended pleading will be deemed filed as of the date of the order granting leave, or as otherwise specified by the presiding judge, and the clerk will file a copy of the amended pleading. (emphasis added).

The closest possible local rule applicable to Plaintiff's Motion to Appoint an Arbitrator was Local Rule 15.1. Given that Plaintiffs were amending their claims, and to demonstrate readiness to proceed to arbitration, Plaintiffs in good faith filed their motion in accordance with Local Rule 15.1. Even if this filing was improper (which Plaintiffs do not concede), it was done in a good faith effort to follow what appeared to be this Court's closest possible rule. Although "[g]ood faith is not a defense to civil contempt… the only "question is whether the alleged contemnor complied with the court's order." *Gibson Brands, Inc. v. Armadillo Distribution Enterprises, Inc.*, No. 4:19-CV-00358, 2023 WL 2352830, at *3 (E.D. Tex. Mar. 3, 2023). As explained above, Plaintiff's filing was done in an attempt to continue to arbitration in light of Defendant's delays. Plaintiff has not violated a court order, and therefore Defendants' motion must be dismissed.

### C. Defendants Have Wasted Judicial Resources and Violated This Court's Order

By filing the instant motion, Defendants have done nothing but waste judicial resources in yet another attempt to gain media coverage. As explained above, Plaintiffs' Motion to Appoint an

7

Arbitrator did not violate this Court's August 12 Arbitration Order in any manner. To the contrary. Plaintiffs' Motion was filed *in an attempt to comply with the Court's Order*. Defendants' delay, ignoring emails, and refusal to cooperate has been the only reason that the parties are not already in arbitration.

Defendants' actions have been textbook violations of the professionalism requirements set forth by this Court. As stated by this Court in *Dondi Properties Corp. v. Com. Sav. & Loan Ass'n*, 121 F.R.D. 284, 287–88 (N.D. Tex. 1988).

> (A) In fulfilling his or her primary duty to the client, a lawyer must be ever conscious of the broader duty to the judicial system that serves both attorney and client.
>
> (B) A lawyer owes, to the judiciary, candor, diligence and utmost respect.
>
> (C) A lawyer owes, to opposing counsel, a duty of courtesy and cooperation, the observance of which is necessary for the efficient administration of our system of justice and the respect of the public it serves.
>
> (D) A lawyer unquestionably owes, to the administration of justice, the fundamental duties of personal dignity and professional integrity.
>
> (E) Lawyers should treat each other, the opposing party, the court, and members of the court staff with courtesy and civility and conduct themselves in a professional manner at all times.
>
> (F) A client has no right to demand that counsel abuse the opposite party or indulge in offensive conduct. A lawyer shall always treat adverse witnesses and suitors with fairness and due consideration.
>
> (G) In adversary proceedings, clients are litigants and though ill feeling may exist between clients, such ill feeling should not influence a lawyer's conduct, attitude, or demeanor towards opposing lawyers.
>
> (H) A lawyer should not use any form of discovery, or the scheduling of discovery, as a means of harassing opposing counsel or counsel's client.
>
> (I) Lawyers will be punctual in communications with others and in honoring scheduled appearances, and will recognize that neglect and tardiness are demeaning to the lawyer and to the judicial system.

> (J) If a fellow member of the Bar makes a just request for cooperation, or seeks scheduling accommodation, a lawyer will not arbitrarily or unreasonably withhold consent.
>
> (K) Effective advocacy does not require antagonistic or obnoxious behavior and members of the Bar will adhere to the higher standard of conduct which judges, lawyers, clients, and the public may rightfully expect.

Further:

> Those litigators who persist in viewing themselves solely as combatants, or who perceive that they are retained to win at all costs without regard to fundamental principles of justice, will find that their conduct does not square with the practices we expect of them. Malfeasant counsel can expect instead that their conduct will prompt an appropriate response from the court, including the range of sanctions the Fifth Circuit suggests in the Rule 11 context: 'a warm friendly discussion on the record, a hard-nosed reprimand in open court, compulsory legal education, monetary sanctions, or other measures appropriate to the circumstances.'

*Dondi*, 121 F.R.D. at 288 (citations omitted). The Court in *Dondi* also reiterated:

> A lawyer should avoid disparaging personal remarks or acrimony toward opposing counsel, and should remain wholly uninfluenced by any ill feeling between the respective clients. He should abstain from any allusion to personal peculiarities and idiosyncracies of opposing counsel.

*Dondi*, 121 F.R.D. at 296. Defendants' conduct has blatantly violated the practices enumerated in *Dondi*, and has only been undertaken in an effort to feed a personal animus against Plaintiff John Davis—who, to note, is not the only Plaintiff in this matter. Defendants accuse Plaintiff of being "unaware" of the standards of *Dondi*, all the while Defendants are the ones bringing the instant Motion in an attempt to bully, intimidate, and garner favorable media attention. This is not what this Court should be used for.

Moreover, Defendants have violated this Court's August 12 Arbitration Order, which clearly states that "All proceedings for the remaining claims are hereby STAYED pending the results of the arbitration pursuant to 9 U.S.C. § 3. The Clerk of Court is DIRECTED to ADMINISTRATIVELY CLOSE this case until such time that the arbitration concludes." ECF 42.

This case is administratively closed. Plaintiff filed his motion only to comply with the Court's Arbitration Order and proceed to arbitration. Defendants' Motion clearly evades the fact that this case is administratively *closed* and seeks to burden this Court with additional, unnecessary motion practice. If anything, Defendants' motion could have, and should have been brought to the Arbitrator's attention.

At the end of the day, it is simple—Plaintiffs are trying to proceed to arbitration. Defendants are delaying and avoiding.

### D. As A Result of Defendants' Improper Motion and Waste of Judicial Resources, Defendants Should Be Ordered to Pay Plaintiff Davis's Attorneys' Fees Associated with This Motion

As Defendants correctly note, "Federal Rule of Civil Procedure 11 places three duties on counsel: (1) counsel must make a reasonable investigation into the factual basis of any pleading, motion, or other paper; (2) counsel must make a reasonable inquiry into the law; and (3) *counsel must not sign a pleading, motion, or other paper intended to delay proceedings, harass another party, or increase the costs of litigation*." *Henderson v. Dep't of Pub. Safety & Corr.*, 901 F.2d 1288, 1295 (5th Cir. 1990) (emphasis added) (citations omitted). District Courts have "authority ... to award attorneys' fees in a civil contempt proceeding." *Carter v. Transp. Workers Union of Am., Loc. 556*, 686 F. Supp. 3d 503, 522 (N.D. Tex. 2023) (quoting *Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272–73 (5th Cir. 1977).

What Defendants fail to do, however, is demonstrate how Plaintiff's actions in any way "intended to delay proceedings, harass another party, or increase the costs of litigation." As demonstrated above, Plaintiff filed his Motion to Appoint an Arbitrator solely to comply with this Court's August 12 Arbitration Order and to proceed forward to arbitration in the most efficient manner, given that the parties could not come to a mutual agreement on an arbitrator for over two

months. Defendants, on the other hand, filed the instant Motion to harass Plaintiff John Davis (not *Plaintiffs*, just to feed their personal vendetta against one of the Plaintiffs—John Davis), to delay proceeding to arbitration, and to increase costs by filing the instant Motion, making further motion practice necessary.

Defendants have used this Motion to project and accuse Plaintiff of everything Defendants have done. **Plaintiff has not delayed—Defendants have**—by way of ignored emails dating back to November 2024 in which Plaintiff attempted to come to an agreement on an arbitrator, multiple unreasonable requests for extensions when Plaintiff *again* was trying to get a list to Magistrate Judge Ray for arbitrator selection so that the parties could move forward, and now the instant motion practice. **Plaintiff has not put forth harassing papers—Defendants have**—by way of the instant motion, accusing Plaintiff of violating a Court order, when it is clear that all Plaintiff has done is try to comply with the Court Arbitration Order and this Court's local rules. **Plaintiff has not sought media attention surrounding arbitrator selection and/or the demand for arbitration—Defendant has**—by way of Defendants' March 4 Inman article. Plaintiffs want to proceed with arbitration and have made that clear. Defendants are improperly using this Court to create frivolous, collateral issues to avoid and distract from the actual litigation at hand.

As a result of Defendants' clear gamesmanship, Plaintiff respectfully requests that this Court award Plaintiff attorneys' fees associated with defending the instant motion.

11

## **CONCLUSION**

For the foregoing reasons, Plaintiff John Davis respectfully requests that this Court deny the Keller Williams Defendants' Motion in its entirety, and award Plaintiff attorneys' fees associated with defending the instant motion.

Dated:  March 21, 2025        Respectfully submitted,

By: */s/ Andrew T. Miltenberg*
Andrew T. Miltenberg, Esq.
Kristen Mohr, Esq.
amiltenberg@nmllplaw.com
kmohr@nmllplaw.com
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
Ph:  (212) 736-4500
*Lead Counsel*

-and-

James Crewse
Texas Bar No. 24045722
jcrewse@crewselawfirm.com
CREWSE LAW FIRM, PLLC
5919 Vanderbilt Ave.
Dallas, TX 75206
Ph: (214) 394-2856
*Local Counsel*

**ATTORNEYS FOR PLAINTIFF JOHN DAVIS**